# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| **ZIM INTEGRATED SHIPPING SERVICES LTD.,** | **Case No. 26-cv-02995** |
| **Plaintiff,** | **IN ADMIRALTY** |
| **v.** | **FED. R. CIV. P. 9(h)** |
| **ELEKTRON ENTERPRISES LLC,** |  |
| **Defendant.** |  |

## DEFENDANT'S MOTION TO DISMISS/STAY PURSUANT TO THE PRIMARY JURISDICTION DOCTRINE

Elektron Enterprises, LLC ("**Elektron**") moves for dismissal (or a stay/ abatement) of this matter pursuant to the "primary jurisdiction" doctrine.[1]

## JUDGE HITTNER CIVIL PROCEDURES MANUAL §6 SUMMARY

Plaintiff Zim Integrated Shipping Services Ltd. ("**Zim**") seeks recovery of amounts it allegedly incurred for "terminal storage charges" (the "**Demurrage Charges**") in connection with the ocean shipment of specialized container modules that were detained at the Port of Houston by U.S. Customs and Border Protection ("**CBP**"). The Federal Maritime Commission ("**FMC**") has primary *__and exclusive__* jurisdiction over the sole issue in this case: whether the Demurrage Charges violate

---

[1] *Maritrend, Inc. v. Galveston Wharves*, 152 F.R.D. 543, 555 (S.D. Tex. 1993) (under primary jurisdiction doctrine "a court may refer the case to an administrative agency and either abate the action and retain jurisdiction or dismiss the action without prejudice."); *Wilbert Family Ltd. P'ship v. Dallas Area Rapid Transit*, 2012 U.S. Dist. LEXIS 9370, *11 (N.D. Tex. Jan. 26, 2012); 2012 WL 246091 (Rule 12(b)(6) dismissal under primary jurisdiction doctrine). Elektron is simultaneously filing a separate motion to dismiss all claims pursuant to Federal Rule 12(b)(6, *solely in the alternative* to its primary jurisdiction grounds for dismissal in this motion.

the Shipping Act (46 U.S.C. §40101 *et seq.,* "**Shipping Act**"[2]) and related FMC regulations.  "A claim for violation of the Shipping Act may only be resolved by the [FMC]."  *Samsung Elecs. Am., Inc., v. SM Line Corp.*, FMC Dkt. No. 23-01, 2025 FMC LEXIS 398, *79-80 (ALJ May 28, 2025); *Alban v. Kawasaki Kisen Kaisha, Ltd.*, 2022 U.S. Dist. LEXIS 153457, *3 (D. N. J. Aug. 25, 2022); 2022 WL 3681242 ("[FMC] ha[s] exclusive jurisdiction over … the Shipping Act's provisions.")

The Demurrage Charges as well as other improper demurrage charges relating to the container modules are already the subject of two complaint proceedings at the FMC: (1) a pending FMC "formal complaint" (under 46 U.S.C. §4130, "**FMC Complaint**") filed May 18, 2026 (FMC docket number pending, *see* Exhibit 1)[3] against Zim (and its general agent Zim American Integrated Shipping Services Co., LLC) by *inter alia* Elektron's subsidiary Down Quark Services, LLC ("DQS"); and (2) a parallel FMC "charge complaint" (under 46 U.S.C. §41310, "**FMC Charge**

---

[2] The Shipping Act comprehensively regulates U.S. shipping, and applies to common carriers engaged in carriage of goods by water in the foreign commerce of the U.S. 46 U.S.C. § 40101(1).

[3] The Court is entitled to consider the FMC Complaint as part of its primary jurisdiction analysis. "[P]rimary jurisdiction 'is properly analyzed under Rule 12(b)(6)' but … the analysis is 'sufficiently akin to a motion under Rule 12(b)(1) . . . so that consideration of documents beyond the four corners of the complaint is appropriate." *In re Nurture Baby Food Litig.*, 2025 U.S. Dist. LEXIS 56512, *39 (S.D.N.Y. Mar. 26, 2025); 2025 WL 918927 (quoting *Canale v. Colgate-Palmolive Co.*, 258 F. Supp. 3d 312, 324 (S.D.N.Y. 2017)). **This Court has likewise applied Rule 12(b)(1) analysis** when a federal agency has exclusive jurisdiction over the underlying dispute. *See Am. Fuel & Petrochemical Mfrs. v. BNSF Ry. Co.,* No. H-15-682, 2016 U.S. Dist. LEXIS 84633 (S.D. Tex. Mar. 11, 2016) (Hittner, J.) (dismissing a dispute that fell "under the exclusive jurisdiction of" a federal agency for lack of subject matter jurisdiction under Rule 12(b)(1)).

#111701513v3

**Complaint**")[4] by TD Logistics, Inc. ("**TD Logistics**"), the destination agent for the container modules, regarding approximately $7 million in other Zim demurrage charges (that may or may not include the Demurrage Charges, *see* §II, pp. 8-9 *infra*).

These FMC proceedings seek invalidation of the Demurrage Charges/other charges on the basis (*inter alia*) that they violate various provisions of the Shipping Act and related FMC regulations.[5] This includes challenges based on Shipping Act/ FMC regulatory violations (under 46 U.S.C. § 40501(a)(1), (b)(4); 46 C.F.R. § 520.4(a)(4); § 520.7(a)(1), and § 520.4(a)(2)) related to Zim's tariff.[6]  Notably, the

---

[4]  FMC "charge complaints" and "formal complaints" are distinct, non-exclusive, potentially sequential procedural mechanisms for parties to challenge demurrage charges before the FMC. *See Guidance on Charge Complaint Interim Procedure*, Federal Maritime Commission, https://www.fmc.gov/ocean-shipping-reform-act-of-2022-implementation/guidance-on-charge-complaint-interim-procedure/ (last visited May 19, 2026) ("A party is not barred from filing a subsequent small claims or formal complaint with the [FMC] based on an initial determination under the Charge Complaint procedure [that the charge may be valid].").

[5] The FMC Complaint generally asserts that Zim's Demurrage Charges/other charges violate the following: 46 U.S.C. §§40501, 41102 & 41104; and various regulations promulgated thereunder, including (*inter alia*) the FMC's recently issued detention and demurrage regulations at 46 C.F.R. Part 541; as well as the FMC's interpretive rule at 46 C.F.R. 545.5 that proscribes the "incentive principle" to assess whether demurrage charges are lawful – i.e. whether the charges incentivize the movement of the cargo/containers. *See Evergreen Shipping Agency (Am.) Corp. v. FMC*, 2026 U.S. App. LEXIS 12089, *7-8 (D.C. Cir. Apr. 28, 2026); __ F.4th __; 2026 WL 1140942 ("Under the Interpretive Rule [including as codified at 46 C.F.R. §545.4], FMC applies an 'incentive principle' to evaluate the reasonableness of challenged detention and demurrage fees….[T]he incentive principle requires that FMC 'consider the extent to which demurrage and detention are serving their intended primary purposes as financial incentives to promote freight fluidity.' *Id*.§ 545.5(c)(1). To illustrate how this works in practice, the Interpretive Rule outlines the '[p]articular application[] of [the] incentive principle' to common scenarios, including '[e]mpty container return.' *Id*.§ 545.5(c)(2). 'Absent extenuating circumstances…imposition of detention when it does not serve its incentivizing purposes, such as when empty containers cannot be returned, [is] likely to be found unreasonable.' *Id*.§ 545.5(c)(2)(ii).").

[6]  *See* Ex. 1 at §IV.H.i.  To summarize this aspect of the FMC Complaint, Zim's tariff ostensibly applies to Zim-owned containers (known in the industry as "carrier-owned containers") used to

3

FMC Complaint is based in part on the fact that **Elektron has never received a single invoice, nor even any informal request for payment, prior to receiving service of the Complaint in this case**, in violation of the Shipping Act and FMC regulations requiring issuance of invoices, with specified information included, absent which "any obligation of the charged party to pay" is "eliminate[d]."[7]

Yet, with this action, Zim has now inappropriately filed two separate federal court cases (here and in the Southern District of New York) in an effort to avoid the FMC's exclusive jurisdiction over all these charges. Zim's two federal lawsuits are retaliatory and discriminatory in their own right (as alleged in both FMC complaints) in violation of the Shipping Act (46 U.S.C. § 41102(d)) because Zim has filed them in reaction to Elektron (and others) disputing the various demurrage charges.

The validity *vel non* of the Demurrage Charges – which are the sole basis for Zim's Complaint in this case - is fundamentally dependent on validity of the charges under the Shipping Act, which lies within the FMC's exclusive jurisdiction.

---

ship third party cargos; whereas the container modules were *not shipping containers* in the standard sense because they were not being used/re-used for shipping third party shippers' cargo (and thus were analogous to what are known in the industry as "shipper-owned containers"). Instead, the container modules are bespoke cargos integral to themselves and intended for delivery to end-users. To the extent Zim relied on its tariff terms to treat the container modules as "typical" Zim-owned shipping containers - and to the extent the tariff does not otherwise include specific terms to address circumstances where shipper-owned container modules *are themselves the cargo* – the tariff, and the Demurrage Charges thereunder, violate the Shipping Act's requirement that ocean carriers maintain tariffs as set forth in 46 U.S.C. §40501.

[7] 46 U.S.C. §41104(f); (a)(15). *See* 46 C.F.R. §541.5 (failure to issue compliant invoice "eliminates any obligation of the billed party to pay the applicable charge.").

4

## I.    FACTUAL BACKGROUND

Zim is a foreign ocean carrier and member of the powerful World Shipping Council trade association that operates approximately "90% of the **world's** . . . shipping vessel services."[8] Zim is registered with the FMC under Organization No. 019210 pursuant to 46 C.F.R. § 520.3 as a vessel operating "ocean common carrier" as that term is defined by 46 U.S.C. § 40102(7) and (18), subject to the Shipping Act and FMC regulations, including requirements to "keep open for public inspection" a tariff (46 C.F.R. § 520.3(a)) and operate in accordance with its tariff provisions (46 U.S.C. §§ 40501 & 41104(a)(1), (2), (4), (8), (11), (12)).

In March 2025, Elektron (via DQS and certain intermediaries) arranged to ship a quantity of specialty container modules via ocean carriage on a Zim-operated vessel from Shanghai, China to Houston, Texas under seven (7) bills of lading issued by Zim to/involving parties *other than Elektron*. SunnySide Digital Inc. ("**SunnySide**," a complainant in the FMC Complaint), handled the various logistics/import compliance processes (alongside certain intermediaries). After the container modules were discharged on or about April 17, 2025 at the Port of Houston, they were subjected to a lengthy CBP hold pending resolution of good faith disputes regarding certain customs entry issues. After CBP issued the hold, and during the entire time the hold was pending, Elektron, SunnySide and DQS pursued

---

[8] *World Shipping Council v. FMC*, 171 F.4th 410, *1-2 (D.C. Cir. 2026).

#111701513v3

all reasonable means to remove the hold and resolve the issues raised by CBP (despite numerous delays by CBP) with respect to the container modules; and ultimately substantially prevailed on their position regarding the disputed classification and valuation issues that prompted the CBP holds (*see* Ex. 1, ¶¶85-89, 111-114).  During this period,  the specialized container modules were not able to be removed from the Port of Houston due to CBP's hold, such that any demurrage charges would not align with the FMC's "incentive principle" (46 C.F.R. §545.5) because no amount of demurrage could incent movement of the cargo.

Despite the inability to remove the specialized container modules during the dispute with CBP, both the Port of Houston and Zim separately and improperly assessed certain demurrage charges[9] relating to the container modules (including nearly $1 million paid by DQS to the Port of Houston, who would not release the container modules without payment).[10]   These charges ostensibly include the Demurrage Charges (which Zim's Complaint characterizes as "terminal storage" charges despite their inherent nature as demurrage charges under the Shipping Act/FMC regulations) during the period of CBP's hold and SunnySide and DQS's

---

[9] 46 C.F.R. § 541.3 defines "Demurrage or detention" as "any charges, including 'per diem' charges, assessed by ocean common carriers, marine terminal operators, or non-vessel-operating common carriers related to the use of marine terminal space (e.g., land) or shipping containers, but not including freight charges." The sums Zim claims as "terminal storage charges" are demurrage charges, which are highly regulated by the FMC.

[10]  This nearly $1 million dollars in so-called "dwell" charges – another variation of FMC-defined demurrage charges – are also the subject of the FMC Complaint.  *See, e.g.,* Ex. 1, ¶1.b, §IV.G.

#111701513v3

good faith dispute and eventual successful resolution of same. As noted earlier, prior to filing this action, Zim never issued a discrete invoice for the Demurrage Charges/"terminal storage charges" (to Elektron or any other intermediary/agent, such as SunnySide, DQS, or to the Shipper, Consignee, or Notify Party on Zim's own master bill of lading), which on its own is a direct violation of the Shipping Act (46 U.S.C. §41104(f)) and correlative FMC regulations (46 C.F.R. Part 541).

The Demurrage Charges - *the sole subject* of Zim's Complaint - were improperly assessed, invalidly invoiced (by not being invoiced at all), and unlawfully charged under the Shipping Act and FMC regulations. By failing to issue any invoices for the improperly assessed Demurrage Charges that it now seeks to collect in this proceeding, Zim violated myriad provisions of the Shipping Act and correlative FMC regulations,[11] all of which are subject to the *exclusive jurisdiction* of the FMC, despite Zim's multi-front tactics to avoid the FMC's oversight.

---

[11] The FMC Complaint (*see* Ex. 1 §V) includes violations of the following: 46 U.S.C. § 41102(c) (failure to establish, observe, and enforce just and reasonable practices related to receiving, handling, storing, and delivering the property of Elektron, in violation of the incentive principle); 46 U.S.C. § 41104(a)(2) (providing liner service not in accordance with published tariff rates/terms); 46 U.S.C. §41104(a)(4)(A) & (E) (imposing invalid demurrage "rates and charges" and refusing to reasonably engage in "adjustment and settlement of claims"); 46 U.S.C. § 41104(a)(14), (15)(A), (B) (assessing charges that are inconsistent with the regulations and the invoice requirements for demurrage or detention charges); 46 C.F.R. Part 541 and 46 C.F.R. §§545.4 and 545.5 (invoicing without required compliance of the "Interpretive Rule on Demurrage and Detention under the Shipping Act"); and violations of Zim's Shipping Act tariff obligations (46 U.S.C. § 40501(a)(1), (b)(4); 46 C.F.R. § 520.4(a)(4); § 520.7(a)(1), and § 520.4(a)(2)).

#111701513v3

Notably, Zim has also filed a *separate* federal lawsuit in the Southern District of New York ("**SDNY**") against TD Logistics **demanding payment in full of $7,050,260.00** in various demurrage charges that Zim previously invoiced to TD Logistics in connection with the container modules. It is not clear whether/to what extent the Demurrage Charges in this case may or may not be included in the approximately $7 million in charges Zim is seeking in the SDNY litigation.  *See* Ex. 1, §J, ¶¶123-128, 135-137. The SDNY suit is currently pending the court's decision on a motion to stay by TD Logistics (which the Court ordered to be filed on or before May 4, 2026), seeking a stay of Zim's alleged common law contract claims on the basis of the FMC's exclusive jurisdiction (to the exclusion of the SDNY) to determine the validity and viability of Zim's invoicing and seeking payment from TD Logistics for the approximately $7 million in Zim charges. *See* Def.'s Mem. of Law in Supp. of Mot. to Stay, *Zim Integrated Shipping Services, Ltd. v. TD Logistics, Inc.*, No. 1:25-cv-09492-AT, (S.D.N.Y. May 4, 2026), R. Doc. No. 37.  Likewise, as referenced in support of its motion to stay, TD Logistics has submitted its own Charge Complaint (dated April 14, 2026) to the FMC (pursuant to 46 U.S.C. § 41310), challenging issuance of the approximately $7 million in Zim demurrage invoices to TD Logistics on the basis that TD Logistics (as mere notify party/destination agent) was not the proper party to be billed for demurrage. *See id.*, R. Doc. 37-1 through 37-3 (attachments to TD Logistics' motion to stay comprising

8

#111701513v3

its FMC charge complaint and FMC correspondence acknowledging same). To reiterate, the SDNY litigation is currently subject to a substantially identical motion to stay based on the primary jurisdiction doctrine.

## II.    ARGUMENT AND AUTHORITIES

### A.    Dismissal/Stay pursuant to the Primary Jurisdiction Doctrine

"The doctrine of primary jurisdiction . . . is a doctrine of judicial abstention whereby a court which has jurisdiction over a matter, nonetheless defers to an administrative agency for an initial decision on questions of fact or law within the peculiar competence of the agency." *Occidental Chem. Corp. v. La. PSC*, 810 F.3d 299, 309 (5th Cir. 2016). "Primary jurisdiction" may be raised on motion or by the Court *sua sponte*. *See* Wright And Miller , 33 FEDERAL PRACTICE & PROCEDURE § 8366 (2d ed.). When the doctrine applies, courts defer consideration of issues and causes of action that fall within the "peculiar competence" of a federal administrative agency until the administrative agency has been afforded an opportunity to act. *Reo Indus., Inc. v. Natural Gas Pipeline Co.,* 932 F.2d 447, 456 (5th Cir. 1991). Courts apply the primary jurisdiction doctrine "whenever enforcement of the claim requires the resolution of issues [which, under a regulatory scheme, have been placed] within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views." *Penny v. Southwestern Bell Tel. Co.*, 906 F.2d 183, 187 (5th Cir. 1990) (alteration

9

#111701513v3

in original); *United States v. Western Pac. R.R. Co*., 352 U.S. 59, 64 (1956). The primary jurisdiction doctrine authorizes a court to either retain jurisdiction and stay the matter pending review by the agency, or dismiss the action without prejudice. *Reiter v. Cooper*, 507 U.S. 258, 268-69 (1993).

While there is no "fixed formula" for applying the primary jurisdiction doctrine, this District looks to the following four factors: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration." *Maritrend, Inc.,* 152 F.R.D. at 555; *Elam v. Kan. City S. Ry.*, 635 F.3d 796, 811 (5th Cir. 2011).  The Fifth Circuit has also applied an essentially identical two-pronged approach: "agency referral is favored when (a) it will  promote even-handed treatment and uniformity in a highly regulated area, or when sporadic action by federal courts would disrupt an agency's delicate regulatory scheme; or (b) the agency possesses expertise in a specialized area with which the courts are relatively unfamiliar." *Elam*, 635 F.3d at 811.

Courts routinely apply the primary jurisdiction doctrine when Shipping Act violations within the FMC's exclusive jurisdiction are at issue: "[t]he doctrine of primary jurisdiction has often been invoked in order to give the FMC an opportunity to determine whether provisions of the Shipping Act… have been violated and to

10

provide an injured party with a remedy for such violations." *Maritrend*, 152 F.R.D. at 555 (collecting cases); *Great White Fleet, Ltd. v. DSCV Transp., Ltd.*, 2002 U.S. Dist. LEXIS 7421, *2 (E.D. La. Apr. 16, 2002); 2002 WL 575703 (applying primary jurisdiction doctrine to allow FMC consideration of disputed Shipping Act charges).

### 1. Application – Primary Jurisdiction Warrants Dismissal/Stay

Whether or not Zim prevails in this suit depends entirely on whether Zim's Demurrage Charges are valid under the Shipping Act. It is undisputed that the FMC has exclusive primary jurisdiction over disputes concerning the Shipping Act, which requires the Court to dismiss or stay this proceeding pending resolution by the FMC. *Maritrend, Inc.,* 152 F.R.D. at 555; *Buchanan v. Fowler,* 381 F.2d 7, 8 (5th Cir. 1967) (recognizing "the long and unbroken line of decisions holding that factual disputes arising under the Shipping Act fall within the primary jurisdiction of Federal Maritime Commission"); *United States Navigation Co. v. Cunard Steamship Co.*, 284 U.S. 474 (1932) (holding disputes related to international shipping fall within the primary jurisdiction of the United States Shipping Board (the predecessor to the FMC)); *Far East Conference v. United States*, 342 U.S. 570 (1952) (same); *Great White Fleet,* 2001 U.S. Dist. LEXIS 13254 at *24-25 ("It is well established in our jurisprudence that the [FMC] has primary jurisdiction over all disputes involving the Shipping Act."). Courts have long held that "[w]hen a claim 'both in the nature of the conduct complained of and the relief sought' is one which could

11

#111701513v3

have been brought under the Shipping Act . . . , the claim may first be properly submitted to the FMC." *Maritrend, Inc.,* 152 F.R.D. at 555 (quoting *A & E Pacific Constr. Co. v. Sai pan Stevedore Co., Inc.*, 888 F.2d 68, 72 (9th Cir. 1989)). Here, the *only* issue in this Court on Zim's Complaint is whether Zim validly assessed the Demurrage Charges against Elektron under the strict demurrage billing framework of the Shipping Act and FMC regulations, *which only the FMC can adjudicate* under its exclusive jurisdiction over Shipping Act violations.

In addition to the well-established precedent regarding the FMC's primary jurisdiction over Shipping Act violations, the four *Maritrend* factors (and substantially similar two-prong *Elam* test) also favor dismissal (or staying) this litigation pending resolution of the underlying issues before the FMC.

Under *Maritrend,* (1) the only relevant issue is the Shipping Act-validity of Zim's Demurrage Charges, a subject that (2) falls exclusively within the FMC's jurisdiction, as granted to it by Congress through the Shipping Act, which (3) established "a comprehensive regulatory scheme for the shipping industry under the administration of the FMC" and (4) requires uniformity of enforcement by the FMC as subject matter experts with extensive experience in (and exclusive Shipping Act jurisdiction over) demurrage billing practices. *Maritrend, Inc.*, 152 F.R.D. at 555. 46 U.S.C. § 41301; *see Texas v. Seatrain Int'l, S. A.*, 518 F.2d 175, 179 (5th Cir. 1975) ("[I]t is obvious that the FMC may forbid activity which violates the Shipping

12

#111701513v3

Act[.]"); *FMC. v. New York Terminal Conf.*, 262 F. Supp. 225, 228 (S.D.N.Y. 1966) (whether carrier charged discriminatory rates requires FMC review).

Likewise, under the *Elam* framework, (a) deferral to the FMC to adjudicate the Shipping Act/FMC regulatory issues on which Zim's claims depend "will  promote even-handed treatment and uniformity in a highly regulated area" and will avoid "sporadic action by federal courts [that] would disrupt [the FMC's delicate regulatory scheme"; and (b) the FMC "possesses expertise in a specialized area with which the courts are relatively unfamiliar" vis-à-vis the recently issued and dynamic Shipping Act and FMC regulatory requirements around demurrage charges. *Compare Wagner & Brown v. ANR Pipeline Co.,* 837 F.2d 199, 202 (5th Cir. 1988) (applying primary jurisdiction doctrine to affirm dismissal of claims involving statutory issues within the exclusive primary jurisdiction of FERC: "A uniform rule is preferable because the interstate market for gas is a nationwide market regulated under a single act of Congress. Conflicting decisions among the districts, even when brought into closer conformity by appellate decisions, are at best a patchwork solution to a problem that requires uniform resolution.").

Pursuant to the Shipping Act as amended by the Ocean Shipping Reform Act of 2022, Congress directed the FMC to develop rules governing prohibited practices in demurrage invoicing. *Demurrage and Detention Billing Requirements*, 89 Fed. Reg. 14330, 14330-31 (Feb. 26, 2024); Public Law 117-146 at Sec. 7(b)(1), 136 Stat.

13

1272, 1275. Development of the demurrage regulations was a multi-year process during which the FMC carefully weighed comments from all major groups of interested parties. *See* 89 Fed. Reg. at 14330-31. Resolving disputes brought under the rules likewise requires the FMC to balance broader policy implications to determine the reasonableness of a party's demurrage billing practices. *See id*; 46 C.F.R. §§ 545.4, 545.5 ("In assessing the reasonableness of demurrage … practices and regulations, the [FMC] will consider the extent to which demurrage and detention are serving their intended primary purposes as financial incentives to promote freight fluidity."). *See also* 46 U.S.C. § 41109 (listing factors that the FMC "shall take into consideration" when assessing penalties under the Shipping Act).

Inconsistent interpretations of the FMC's demurrage rules by Federal courts would erode the uniformity and predictability on which global trade relies and which Congress sought to promote through the Shipping Act and its regulations. 89 Fed. Reg. at 14353 ("The main purpose of this rule is to provide clarity and transparency of invoices and the billing process."); 46 U.S.C. § 40101.  Because the FMC's rules regarding demurrage comprise a relatively new and dynamically developing regulatory scheme, the risk of inconsistent rulings by courts is substantial. *Compare World Shipping Council v. FMC*, 152 F.4th 215 (D.C. Cir. 2025) (invalidating one of the FMC's detention and demurrage regulations (46 C.F.R. 541.4) as arbitrary and capricious) *with Evergreen Shipping Agency (Am.) Corp.*, 2026 U.S. App.

14

LEXIS 12089, at \*9 (upholding FMC determination of invalid detention charges under the Shipping Act/FMC detention and demurrage regulations). Without consistent application by a singular body—the FMC—the impact of inconsistent judicial rulings would inflict substantial hardship on national and international trade.

As demonstrated by the FMC Complaint (Ex. 1), and further evidenced by TD Logistics' parallel FMC Charge Complaint, resolution of this matter requires determination of numerous Shipping Act/regulatory provisions to determine whether Zim's Demurrage Charges violate the Shipping Act, which is an issue within the FMC's exclusive jurisdiction; as well as the related analysis of a complex set of facts and application of highly technical regulations best suited for interpretation by the FMC. Indeed, as the FMC has held, "**the proper and exclusive forum"** for asserting demurrage charge disputes under the Shipping Act is before the FMC. *See Samsung Electronics Am., Inc. v. Orient Overseas Container Line Ltd. et al.*, Docket No. 24-17, 2025 FMC LEXIS 250, at \*7 (FMC Mar. 31, 2025)("[FMC] is the proper and exclusive forum for raising [Shipping Act] claims."). Because the parties' liabilities will be dispositively determined/ affected by a finding that Zim violated the Shipping Act – which only the FMC can determine –the Court should dismiss or stay the action until the FMC issues a final decision.

Further, because Zim's allegations and claims depend entirely and exclusively on the validity of the Demurrage Charges and practices under the demurrage-specific

15

Shipping Act and FMC regulations, dismissal without prejudice under the primary jurisdiction doctrine is the most efficient and practical result.[12]  Indeed, under the primary jurisdiction doctrine,  "[d]ismissal of the complaint may be appropriate when all of the relief that is sought in court can be obtained in an administrative forum."[13]  Here, the issue of whether Zim's Demurrage Charges are valid and owed – *which is the essentially the sole issue* in these proceedings – can ***only*** be determined by the FMC.  Moreover, "[FMC] precedent holds that even when there is litigation between the parties in other courts, the [FMC] has an obligation to determine whether an entity has violated the Shipping Act."[14]  Thus, the FMC proceedings will proceed *regardless* of how this Court rules on the instant motion.

---

[12] In the analogous context of railcar demurrage subject to the specialized agency jurisdiction of the federal Surface Transportation Board ("**STB**"), courts routinely dismiss cases under the primary jurisdiction doctrine to avoid unnecessary costs, discovery efforts, etc.  *See Union Pac. R.R. Co. v. Diamond Plastics Corp*., 2023 U.S. Dist. LEXIS 141469, *3 (D. Nev. Aug. 11, 2023); 2023 WL 5918064 ("To start, if . . . the primary jurisdiction doctrine applies on any set of facts that could be developed by the parties, there is no reason to await discovery, summary judgment, or trial, and the application of the doctrine properly may be determined on the pleadings. Such is the case here. Regardless of any other reasons [plaintiff] may offer for not paying [rail carrier's] tariffs at issue, the reasonableness of those tariffs is certainly one of them, and is an issue that will have to be resolved before this case can be finally adjudicated. It accordingly appears more efficient to have the STB weigh in on the reasonableness of Union Pacific's tariffs before this case proceeds farther. And efficiency is the deciding factor in whether to invoke primary jurisdiction. Moreover, courts have consistently determined that challenges to the reasonableness of a railroad's tariffs are properly referred to the STB (or its predecessor the ICC) under the primary jurisdiction doctrine. [Collecting numerous cases, including] *Norfolk S. Ry. Co. v. Judge Warehousing, LLC*, 409 F. Supp. 3d 1350, 1358-59 (S.D. Ga. 2019) ("[i]f the STB finds that any of the practices are unreasonable and that demurrage should not be assessed in those instances, such a finding would aid in determining what amount of demurrage charges are owed.") (citations/quotations omitted).

[13] *Rymes Heating Oils, Inc. v. Springfield Terminal Ry. Co.*, 358 F.3d 82, 91 n.9 (1st. Cir. 2004) (quoting *Hansen v. Norfolk & W. Ry. Co.*, 689 F.2d 707, 714 (7th Cir. 1982)).

[14] *See Marie Carew d/b/a Holiday Shipping v. Maersk Line A/*S, Docket No. 20-17, 2021 FMC

16

#111701513v3

Because Zim's claims "both in the nature of the conduct complained of and the relief sought [are] one[s] which could have been brought under the Shipping Act," pursuant to Fifth Circuit precedent, this Court should stay or dismiss this proceeding pending resolution of the FMC Complaint/parallel TD Logistics FMC Charge Complaint. *Maritrend, Inc.,* 152 F.R.D. at 555 (quotation omitted).

## III.  Conclusion and Prayer

Zim's claims depend entirely on whether the Demurrage Charges they seek to recover here are valid, or whether those charges violate the numerous provisions of the Shipping Act and FMC regulations at issue in (1) the FMC Complaint (Ex. 1) and the parallel FMC Charge Complaint (by TD Logistics) relating to Zim's various demurrage charges assessed with respect to the container modules.  This issue – validity, or not, of Zim's charges – **is within the exclusive jurisdiction of the FMC**, and the primary jurisdiction doctrine thus warrants dismissal (or stay/ abatement) of this action.  Elektron requests that the Court dismiss this matter without prejudice, or stay/abate all proceedings and related deadlines, pending the outcome of Elektron's FMC Complaint and/or TD Logistics' parallel FMC Charge Complaint.

---

LEXIS 10, at *2 (FMC Jan. 25, 2021) (citing *VerTerra Ltd. v. D.B. Group Am. Ltd.*, Docket No. 19-09, 2020 FMC LEXIS 31, at *2 (FMC March 5, 2020)).  *Accord 20230930-DK-BUTTERFLY-1, Inc. f/k/a Bed Bath & Beyond Inc. v. Evergreen Line Joint Service Agreement*, Docket No. 24-12, 2024 FMC LEXIS 483, at *16(FMC June 26, 2024).

#111701513v3

Respectfully Submitted,

_/S/ Sara B. Kuebel_____
SARA B. KUEBEL
Texas Bar No. 24147092
S.D. Tex. Federal No. 3504183
Jones Walker, LLP
201 St. Charles Avenue - 48th Floor
New Orleans, Louisiana 70170-5100
Telephone:     (504) 582-8483
Facsimile:     (504) 589-8483
E-Mail:  skuebel@joneswalker.com

**Attorneys for Elektron Enterprises, LLC**

**OF COUNSEL** (*pro hac vice* applications forthcoming):

Julia Bonestroo Banegas
Jones Walker LLP
Suite 600
1 M Street SE
Washington, DC 20003
Tel: 202.203.1032
Email: jbanegas@joneswalker.com

Christopher M. Hannan
Jones Walker LLP
Suite 5200
201 St. Charles Ave.
New Orleans, LA 70170
Tel: 504.582.8353
Email: channan@joneswalker.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2026, a true copy of the foregoing was filed electronically on the Court's CM/ECF docketing system. Notice of this filing will be sent by e-mail to all parties and counsel of record via the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

_/S/ Sara B. Kuebel_____
Sara B. Kuebel

18

#111701513v3