UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ZIM INTEGRATED SHIPPING SERVICES LTD., | Case No. 26-cv-02995 |
| Plaintiff, | IN ADMIRALTY FED. R. CIV. P. 9(h) |
| v. | |
| ELEKTRON ENTERPRISES LLC, | |
| Defendant. | |

## DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Solely in the alternative to its contemporaneously filed motion to dismiss pursuant to the primary jurisdiction doctrine, Elektron Enterprises, LLC ("**Elektron**") also moves to dismiss all claims of Plaintiff Zim Integrated Shipping Services Ltd. ("**Zim**") pursuant to Rule 12(b)(6) for failure to state any viable claim under the *Iqbal/Twombly* standard.

## JUDGE HITTNER CIVIL PROCEDURES MANUAL §6 SUMMARY

Zim's claims in this proceeding seek recovery of amounts it allegedly incurred for "terminal storage charges" (the "**Demurrage Charges**")[1] in connection with the ocean shipment of specialized container modules that were detained at the Port of

---

[1] While Zim has framed its claim in terms of recovery of "terminal storage charges" (*see, e.g.*, Rec. D. 1, ¶17-21), those charges constitute "demurrage" under the Shipping Act and FMC regulations. 46 C.F.R. § 541.3 defines "Demurrage or detention" as "any charges, including 'per diem' charges, assessed by ocean common carriers, marine terminal operators, or non-vessel-operating common carriers related to the use of marine terminal space (e.g., land) or shipping containers, but not including freight charges." The sums Zim claims as "terminal storage charges" are demurrage charges, which are highly regulated by the FMC.

#111701659v6

Houston by U.S. Customs and Border Protection ("**CBP**"). Zim's Complaint asserts mere conclusory labels and legal conclusions, without any supporting facts and in contradiction of applicable law, in an attempt to shoehorn fundamental issues under the Shipping Act (46 U.S.C. §40101 *et seq.,* "**Shipping Act**") and in the exclusive jurisdiction of the Federal Maritime Commission ("**FMC**")[2] into inapposite common law claim frameworks (maritime indemnity, unjust enrichment, and negligence) that are insufficiently pled under the *Iqbal/Twombly* standard.   In addition to being inadequately pled, the indemnity cause of action is contrary to governing indemnity principles; the unjust enrichment claim is non-viable because Zim's claims are governed by other contracts; and the negligence claim alleges a non-existent tort duty and is also barred by the *Robins Dry Dock/*Texas economic loss rule.

## I.   FACTUAL BACKGROUND

In March 2025, Elektron (via DQS and intermediaries) arranged to ship a quantity of specialty container modules via ocean carriage on a Zim-operated vessel from Shanghai, China to Houston, Texas under seven bills of lading issued by Zim to parties *other than Elektron*. Elektron does not appear anywhere in the bills of

---

[2] "A claim for violation of the Shipping Act may only be resolved by the [FMC]." *Samsung Elecs. Am., Inc., v. SM Line Corp.*, FMC Dkt. No. 23-01, 2025 FMC LEXIS 398, *79-80 (ALJ May 28, 2025); *Alban v. Kawasaki Kisen Kaisha, Ltd.*, 2022 U.S. Dist. LEXIS 153457, *3 (D. N. J. Aug. 25, 2022); 2022 WL 3681242 ("[T]he [FMC] ha[s] exclusive jurisdiction over administration of the Shipping Act's provisions.").

lading.[3]    SunnySide Digital Inc. ("**SunnySide**") handled importation. After the container modules were discharged on or about April 17, 2025 at the Port of Houston, they were subjected to a lengthy CBP hold related to entry classification and valuation questions from CBP.  Throughout the time the hold was pending, Elektron, SunnySide and DQS pursued all reasonable means to remove the hold and resolve the issues (despite numerous delays by CBP); and ultimately prevailed on their position regarding the disputed classification/valuation issues that prompted the holds (Ex. 1, ¶¶85-89, 111-114).  During this period,  the container modules could not be removed from the Port of Houston due to CBP's hold, such that any demurrage charges would not align with the FMC's "incentive principle" (46 C.F.R. §545.5) because no amount of demurrage could incent movement of the cargo.

Despite the inability to remove the specialized container modules during the dispute with CBP, both the Port of Houston and Zim separately and improperly assessed demurrage charges relating to the container modules.[4]  These charges ostensibly include the  Demurrage Charges (which Zim has characterized in this lawsuit as "terminal storage" charges despite their inherent nature as demurrage

---

[3]  *See* Exhibit 2.  The bills of lading are referred to in Zim's Complaint and may be considered on a Rule 12(b)(6) analysis. *Walker v. Beaumont Indep. Sch. Dist.,* 938 F.3d 724, 735 (5th Cir. 2019).

[4]  The Port of Houston charged DQS nearly $1 million dollars in so-called "dwell" charges – another variation of FMC-defined demurrage charges – in relation to the container modules, which DQS had to pay in order to remove the modules from the port.  These "dwell" demurrage charges by the Port of Houston are also the subject of the FMC Complaint. *See, e.g.,* Ex. 1, ¶1.b, §IV.G.

charges under the Shipping Act and FMC regulations) during the period of CBP's hold and SunnySide good faith dispute and eventual successful resolution of same. Prior to filing this action, Zim has never issued a discrete invoice for the Demurrage Charges/"terminal storage charges" (to Elektron or any other intermediary/agent, such as SunnySide, DQS, or to the Shipper, Consignee, or Notify Party on Zim's own master bill of lading), which on its own is a direct violation of the Shipping Act (46 U.S.C. § 41104(f)) and correlative FMC regulations (46 C.F.R. Part 541).

The Demurrage Charges and other improper demurrage charges relating to the container modules are already the subject of two complaint proceedings at the FMC: (1) a pending FMC "formal complaint" (under 46C.F.R. § 502.62, "**FMC Complaint**") filed May 18, 2026 (FMC docket number pending, Exhibit 1) against Zim (and its general agent Zim American Integrated Shipping Services Co., LLC) by *inter alia* Elektron's subsidiary Down Quark Services, LLC ("DQS"); and (2) a parallel FMC "charge complaint" (under 46 U.S.C. § 41310)[5] filed by TD Logistics, Inc. ("**TD Logistics**"), the destination agent for the container modules, regarding approximately $7 million in other demurrage charges (that may or may not be included in the Demurrage Charges, *see* Ex. 1 at ¶¶130-33, 135) assessed by Zim.

---

[5] FMC "charge complaints" and "formal complaints" are distinct, non-exclusive, and potentially sequential procedural mechanisms by which parties can challenge demurrage charges before the FMC. *See* https://www.fmc.gov/ocean-shipping-reform-act-of-2022-implementation/guidance-on-charge-complaint-interim-procedure/.

#111701659v6

## II.    Argument and Authorities

### A.    Rule 12(b)(6) Standards

This Court has recently set forth the Rule 12(b)(6) standard of review under the *Iqbal/Twombly* framework. "[U]nder Rule 8(a)(2) a pleading must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Fed. R. Civ. P. 8(a)(2) [; and although this] does not require 'detailed factual allegations,' [the complaint] must contain more than . . . labels and conclusions" to state a valid claim under Rule 12(b)(6). *Capers v. NewRez, LLC*, No. 25-5480, R. Doc. 23; 2026 U.S. Dist. LEXIS 95122, *2-3 (S.D. Tex. Apr. 30, 2026) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555). "To survive the motion, a plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570. "Conversely, 'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should…be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* (citations/quotations omitted).

"A plausible claim must allege more than the mere possibility of misconduct." *Hershner v. City of Dallas*, 2024 U.S. App. LEXIS 25703, *4 (5th Cir. Oct. 11, 2024); 2024 WL 4471503. "[W]here the well-pleaded facts do not permit the court

#111701659v6

to infer more than the mere possibility of misconduct, the complaint has alleged—

but it has not 'show[n]'- 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at

679 (quoting Fed. Rule Civ. Proc. 8(a)(2)).

### 1. Application – Zim Fails to state a Claim on all 3 Causes of Action

Zim's complaint (independent of the grounds for dismissal under the primary

jurisdiction doctrine) fails to state any viable cause of action under the Rule 12(b)(6)

*Iqbal/Twombly* pleading standards. The Complaint allegations are paradigmatic

examples of bald "conclusory statements" and mere "labels and conclusions,"

without any facts to support Zim's three asserted causes of action.

### a. Zim Fails to State a General Maritime Law Indemnity Claim

Zim's first putative cause of action is for common law "maritime indemnity"

(Rec. D. 1, ¶¶24-26) based on Zim's alleged involuntary payment of the Demurrage

Charges to the Port of Houston due to customs clearance acts/omissions by Elektron.

> [G]eneral maritime law only recognizes three theories of indemnity
> [under *Hardy v. Gulf Oil Corp.*, 949 F.2d 826, 833-34 (5th Cir. 1992),
> hereafter "*Hardy* Theories"]: (1) a vicariously liable or non-negligent
> tortfeasor, upon which the law imposes responsibility even though he
> committed no negligent act, may seek indemnity from the party at fault;
> (2) a vessel owner may recover indemnity from a stevedore [or other
> maritime service provider[6]] if the stevedore[/service provider] breaches

---

[6] The so-called *Ryan* doctrine extends this category to both stevedores and "other shore-based contractors who go aboard a vessel by the owner's arrangement or by his consent to perform service for the ship's benefit." *Lejeune v. Prod. Servs. Network U.S.,* 2015 U.S. Dist. LEXIS 22955, *7-8 (E.D. La. Feb. 25, 2015); 2015 WL 846694 (quoting *Parfait v. Jahncke Service, Inc.*, 484 F.2d 296, 301 (5th Cir. 1973). However, the Fifth Circuit "has described the [*Ryan*] doctrine as 'withered' and has refused to extend the doctrine beyond those controversies involving the special

the warranty of workmanlike performance implied in the contract between the  vessel owner and the stevedore[/service provider]; or (3) …[pursuant to] an indemnity provision in a maritime contract.

*Pacific-Gulf Marine, Inc. v. Norsafe*, 2011 U.S. Dist. LEXIS 175335, *18-19 (E.D. La. Feb. 11, 2011); 2011 WL 13213832.

### (1) No Basis for Contract-Based *Hardy* Indemnity

Starting in reverse order with the third *Hardy* Theory, Zim has not alleged facts sufficient to state any sort of contract-based indemnity owed by Elektron.  The only colorable reference to a contract is at Complaint ¶9, identifying (but not attaching) the bills of lading (Ex. 2) Zim issued for shipment of the container modules.  However, there is no allegation identifying *to whom* those bills of lading were issued; *the identity of* the shipper(s), consignee(s) and/or notify party(ies) on those bills of lading; nor the substance of *any relevant terms and conditions* of the bills of lading; and Elektron *does not appear anywhere* in the bills of lading.  As Zim should be well aware from dismissal of its own prior lawsuit, this sort of passing reference to a bill of lading is insufficient under Rule 12(b)(6) and the *Iqbal/ Twombly* standard to state a claim for demurrage charges:

> It is neither evident from [Zim's] conclusory allegations in the Complaint nor the bills of lading themselves when or by what transaction Defendant assumed any obligations under either of the bills of lading…[T]he Zim Bill of Lading does define "Merchant"— potentially liable under the demurrage and detention clauses

---

rules governing the obligation and liability of shipowners [i.e. strict liability for unseaworthiness] which necessitated its formulation." *Id*.

quoted *supra*—as "jointly and severally the shipper, the consignee, the holder and any assignee or endorsee of this Bill of Lading." However, the Complaint itself does not allege that Defendant is the "shipper, the consignee, the holder, [or] any assignee or endorsee" of the Zim Bill of Lading, *id.*, or when or by what transaction it became such a party. Moreover, even where a defendant may fall within the definition of such a broad "Merchant" clause, a party is not bound to the terms of a bill of lading unless the party consents to be bound. Plaintiff has not pled any factual allegations, necessary to support its claims, that Defendant was a party to or an assignee of either of the bills of lading, that it fell within the Merchant clause of the Zim Bill of Lading, or that it "consent[ed] to be bound" by the terms of any bill of lading.

*Zim Am. Integrated Shipping Servs. Co., LLC v. Sportswear Grp., LLC*, 550 F. Supp. 3d 57, 66 (S.D.N.Y. 2021).  The same analysis applies here, particularly where Zim has not attached the bills of lading (in which Elektron does not appear) – nor even pled any wording/terms/conditions thereof.  There is no sufficiently pled basis for any contractually based *Hardy* "maritime indemnity" in the Complaint, and any such claim must be dismissed under Rule 12(b)(6).

Moreover, to the extent Zim alleges it was "required to pay and satisfy… terminal charges in order to maintain terminal access, cargo operations and its contractual and operational relationship with" the Port of Houston (Rec. D. 1, ¶18), Zim has not pled *facts or contractual terms* regarding why it was allegedly "required" to pay the Port of Houston, and instead makes the conclusory allegation that "as ocean carrier, it was required to pay and satisfy such terminal charges" (Rec. D. 1, ¶18).  This cannot satisfy the Rule 12(b)(6) standard.  If Zim is claiming against Elektron pursuant to "requirements" derived from its contractual (or other)

8

obligations to the Port of Houston, such facts must be alleged under *Iqbal/ Twombly*. It is insufficient to assert the bare conclusion that it was "required" to pay based on "unspecified contract provisions," without "identify[ing] which provision of [the relevant contract]" is at issue; and "only a general allegation [that] lacks the further factual enhancement" to identify relevant contractual terms is also insufficient. *Guajardo v. JP Morgan Chase Bank, N.A.*, 605 Fed. Appx. 240, 244 (5th Cir. 2015).

Further, under Texas law, "[c]ommon law indemnity has been abolished by statutory comparative negligence with two exceptions: where liability is vicarious and…in products liability cases [not applicable here]." *Capitol One, N.A. v. Custom Lighting & Elec., Inc.*, Case No. 09-3624, 2010 U.S. Dist. LEXIS 125290, *15 (S.D. Tex. Nov. 29, 2010). Under this framework, a plaintiff must allege existence of a relationship with the defendant, such as "an agency or surety relationship," to withstand a Rule 12(b)(6) challenge. *Id*. at 16-17. Zim does not do so, and for this additional reason fails to state a claim under Rule 12(b)(6) and *Iqbal/ Twombly*.

### (2) No Basis for Stevedore/Maritime Services *Hardy* Indemnity

The second *Hardy* Theory does not apply because there is no allegation regarding stevedoring or any other maritime services, nor any warranty of workmanlike performance by anyone, much less by Elektron. Zim has failed to state any viable claim on this second *Hardy* Theory under the *Iqbal/Twombly* standard.

### (3) No Basis for *Hardy* Tort-Based Indemnity

9

#111701659v6

As for the first (and final) *Hardy* Theory, Zim does not allege any "vicariously liability" in tort, or that it was some sort of "non-negligent tortfeasor, upon which the law imposes responsibility even though [Zim] committed no negligent act" such that it would have a maritime common law/equitable right to indemnity.[7]  Indeed, there is no allegation *at all* (under the indemnity count) of any ***tort*** or ***non-contractual vicarious*** liability that Zim incurred as to the container modules. The sole relevant alleged basis for Zim's claim vis-à-vis "maritime indemnity" is that "Zim paid terminal storage charges to the Port of Houston… attributable to" the container modules (Rec. D. 1, ¶20) that were "required in order to maintain terminal access, cargo operations and [Zim's] contractual obligations to" the Port of Houston (*id.* at ¶26). **This is fundamentally a *contractually* rooted basis** for Zim's alleged liability, *not a tort-based one*, and the Fifth Circuit's tort-derived maritime indemnity principles do not apply.  Whatever contractual terms Zim may have had with the Port of Houston that required Zim to pay "terminal storage" fees, which *Zim has not pled*—and any potential contract rights Zim may have against any other parties, *which Zim has also not pled*—are legally unrelated to Zim's

---

[7] The Fifth Circuit has separately sub-categorized three grounds for general maritime common law ***tort*** indemnity: "(1)…[for] an indemnitor[-]indemnitee relation… (2) [for] a significant difference in the indemnitor and indemnitee's degree of conduct; and (3) when there is a difference in character of the duties owed by the two to the injured party."  *LCI Shipholdings, Inc. v. Muller Weingarten AG*, 153 Fed. Appx. 929, 931 (5th Cir. 2005) (citing *Cities Serv. Co. v. Lee-Vac, Ltd.*, 761 F.2d 238, 240 (5th Cir. 1985) (citing W. Prosser, THE LAW OF TORTS § 51 (4th ed. 1971))). Zim has not adequately pled ***any*** tort-based indemnity, so these sub-categories are irrelevant.

#111701659v6

attempted tort-based maritime indemnity cause of action.  The first *Hardy* Theory for tort-related "maritime indemnity" *does not apply* as Zim has pled at ¶¶23-27 because there *is no allegation* of any tort for which Zim has been held liable.[8]

Zim's Complaint does not include allegations sufficient under the *Iqbal/Twombly* standard to state any legally viable basis for maritime indemnity, and those claims should be dismissed pursuant to Rule 12(b)(6).

### b.  Zim Fails to State a Viable Unjust Enrichment Claim

Zim's second claim alleges that Elektron owes Zim the Demurrage Charges under the equitable theory of unjust enrichment (Rec. D. 1, ¶¶ 28-31), but does not include sufficient facts under *Iqbal/ Twombly* to state a viable claim.

Under Texas law (analogous to general maritime law[9]), unjust enrichment requires a showing that: "(1) valuable services were rendered …; (2) for the person

---

[8] Further, analogous caselaw recognizes that in the context of multi-party, multi-layered, multi-contract shipping transactions, with various parties (common carriers, various logistics intermediaries, etc.), any failure to properly arrange for clearance through customs is "not a violation of an obligation imposed by law, but rather a breach of … contractual duties." *Schenker, Inc. v. Expeditors Int'l of Wash., Inc.*, 2016 N.J. Super. Unpub. LEXIS 1535, *8-9 (N.J. Super. Ct. App. Div. July 1, 2016).  *See also D. J. Powers Co. v. Peachtree Playthings, Inc.*, 348 Ga. App. 248, 255 (Ga. Ct. App. 2018) (sugar importer had no tort claim relating to customs broker's alleged customs clearance errors). *See also* §II.A.1.c *infra*.

[9] Courts in the Fifth Circuit routinely apply Texas law to evaluate claims of unjust enrichment in cases otherwise brought under general maritime law. *See Diamond Servs. Corp. v. RLB Contr., Inc.,* 113 F.4th 430, 443 (5th Cir. 2024); *Malin Int'l Ship Repair & Drydock, Inc. v. Oceanografia, S.A. de C.V.*, 2014 WL 12616099, *2 (S.D. Tex. Nov. 24, 2014) (applying Texas law to a quantum meruit claim in a maritime case), *aff'd* 817 F.3d 241 (5th Cir. 2016). Under federal law, the basic requirements of unjust enrichment are substantively identical to Texas law: a party is unjustly enriched when it "benefits at another's expense, and [] allowing that party to retain that benefit would be inequitable." *Copar Pumice Co. v. United States*, 112 Fed. Cl. 515, 538 (Fed. Cl. 2013). Thus, a claim of unjust enrichment fails under federal maritime law if it fails under Texas law.

11

sought to be charged; (3) which services…were accepted by the person sought to be charged, used and enjoyed by him; (4) under such circumstances as reasonably notified the person sought to be charged." *Reveille Trucking, Inc. v. Lear Corp.,* 2017 U.S. Dist. LEXIS 22639, *33 (S.D. Tex. Feb. 16, 2017); 2017 WL 661521.

An unjust enrichment claim fails when a contract governs the services rendered. *Id.*; *Abira Med. Labs. LLC v. UMR Ins. Co.,* No. 5:24-CV-00777-JKP, 2025 U.S. Dist. LEXIS 128850, *8-9 (W.D. Tex. July 7, 2025) (citing *Vortt Exploration Co., Inc. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990))). Importantly, "[c]ourts have applied this bar to quasi-contract recovery [e.g. unjust enrichment] even in cases where the contract was not between parties to the lawsuit because a contract sufficiently governed the subject matter of the claims." *Adidas Am., Inc. v. Shoebacca Ltd.,* 2021 U.S. Dist. LEXIS 183828, *13 (N.D. Tex. Sept. 27, 2021); 2021 WL 4399745 ("The express contract bar applies not only [for claims] in quantum meruit…but also when the plaintiff seeks recovery from a third party foreign to the original contract but who benefitted from its performance."); *accord Diamond Servs. Corp. v. RLB Contr., Inc.*, 113 F.4th 430, 443 (5th Cir. 2024).

Zim's conclusory allegations that "Elektron benefited from Zim's payment of terminal storage charges associated with its cargo" requiring reimbursement to Zim (Rec. D. 1, ¶¶29-30) do not meet the *Iqbal/Twombly* standard. Zim fails to state *any* facts to show how Elektron would be unjustly enriched under any of the four unjust

12

#111701659v6

enrichment factors. Regardless, because Zim is party to contracts (at the very least, the bills of lading and its contractual arrangement with the Port of Houston, which *it has not sufficiently pled*) governing the Demurrage Charges, it cannot resort to unjust enrichment under well-established law. *See Shoebacca Ltd.,* 2021 U.S. Dist. LEXIS 183828 at *13; *Abira Med. Labs. LLC*, 2025 U.S. Dist. LEXIS 128850.

Zim's Complaint does not specify what (1) "valuable services" were rendered by Zim (2) to Elektron nor (3) how Elektron accepted or was benefitted by them, such that (4) Elektron should expect to be charged. This is a particularly glaring omission given that Elektron's subsidiary DQS *separately paid* nearly $1 million directly to the Port of Houston in other alleged demurrage charges for the modules (*see* FN 4 *supra*). Additionally, Zim never invoiced Elektron for the Demurrage Charges, so Elektron was never "reasonably notified" that Zim would later seek reimbursement from Elektron via this suit. "This is exactly the type of unsupported, conclusory assertion that [this Circuit] routinely reject[s]." *Badeaux v. BP Expl. & Prod.*, 790 Fed. Appx. 618, 620 (5th Cir. 2019).

And, again, Zim's contracts vis-à-vis (at least) its bills of lading and arrangement with the Port of Houston govern the payment of any storage charges related to the container modules and preclude any claim for unjust enrichment. *Shoebacca Ltd.,* 2021 U.S. Dist. LEXIS 183828 at *13 (Rule 12(b)(6) dismissal of unjust enrichment claim was "apparent from the face of the complaint" because of

13

contracts covering the underlying dispute); *Abira Med. Labs. LLC*, 2025 U.S. Dist. LEXIS 128850 at *9-10 (dismissing an unjust enrichment claim because "existence of [the] agreements (and the underlying obligations) make equitable recovery under a theory of unjust enrichment or quantum meruit inappropriate").

Zim's Complaint does not state the requisite factual basis under the *Iqbal/Twombly* standard to support a claim for unjust enrichment; and it is also barred as a matter of law under the prevailing jurisprudence prohibiting unjust enrichment when other contracts govern. Zim's unjust enrichment claim is therefore subject to dismissal pursuant to Rule 12(b)(6).

### c. Zim Fails to State any Viable Negligence Claim

Zim also fails to state a claim for Elektron's negligence (Rec. D. 1, ¶¶32-39) because (1) Elektron owed no duty to Zim as to customs filings (which SunnySide processed, not Elektron); and (2) any alleged damages are pure economic losses barred by the maritime *Robins Dry Dock* doctrine and Texas economic loss rule.

### (1) No General Duty to Third Parties for Customs Compliance

Zim's negligence allegations are bare legal conclusions that *Iqbal/Twombly* prohibits. Zim asserts Elektron "owed a duty to exercise reasonable care" regarding customs clearance (Rec. D. 1, ¶33-35), but does not allege *any facts* to specify the basis for such "general maritime law" duty, nor how it was allegedly breached.

14

More importantly, while there is a "reasonable care" obligation under 19 U.S.C. §1484(a), any duty thereunder runs to CBP and *there is no private right of action* thereunder. *See Horde v. Elliot,* 2018 U.S. Dist. LEXIS 27624, *26 (D. Minn. Jan. 9, 2018); 2018 WL 987683 ("[T]here is nothing to suggest from the language of 19 U.S.C. §1592 [a correlative provision to the "reasonable care" clause of §1484 prohibiting "negligent" customs entries] that Congress intended to confer a private right of action or a private remedy under 19 U.S.C. §1592."); *see also Schenker,* 2016 N.J. Super. Unpub. LEXIS 1535 at *8-9 ("[A]ny failure to properly arrange for clearance through customs [is] not a violation of an obligation imposed by law."). Equally important, Zim does not allege any facts regarding how Elektron supposedly "fail[ed] to properly declare, classify, value, and/or ensure compliance" with CBP import requirements (Rec. D. 1, ¶34). This allegation is nothing more than a mere "label and conclusion" that does not meet the *Iqbal/Twombly* standard.

### (2) No Claim under *Robins Dry Dock*/Economic Loss Rule

As to damages, maritime law bars negligence claims for pure economic losses under the *Robins Dry Dock* doctrine: "[A]bsent privity of contract between the parties and injury to a person or property, a plaintiff may not recover in negligence for economic loss." *A&H Props. P'ship v. GPM Eng'g*, 2015 Tex. App. LEXIS 12879, *4 (Tex. App. Dec. 23, 2015); 2015 WL 9435974 (citing *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 307-09 (1927); *Golden Spread Elec. Coop.,*

15

#111701659v6

*Inc. v. Emerson Process Mgmt. Power & Water Sols.*, 954 F.3d 804, 808 (5th Cir. 2020) (economic loss rule generally prevents recovery in tort for purely economic damage unaccompanied by injury to persons or property); *Planes Pipeline, L.P. v. Great Lakes Dredge & Dock Co.*, 620 Fed. Appx. 281, 285(5th Cir., 2015) ("The purpose of the *Robins Dry Dock* rule . . . is to serve as a pragmatic limitation on the doctrine of foreseeability, giving judges an easily administrable rule of decision and allowing parties to order their affairs in view of predictable outcomes.")

This rule binds not only parties "in a direct contractual relationship but also… preclude[s] tort claims between parties…not in contractual privity." *A&H Props.*, 2015 Tex. App. LEXIS 12879, at *4. Further, "even if the two parties at issue have not actually entered into an agreement with each other," the economic loss rule still bars tort claims "on the theory that tort law should not supplant a consensual network of contracts." *In re Heartland Payment Sys., Customer Data Sec. Breach Litig.*, 834 F. Supp. 2d 566, 585 (S.D. Tex. 2011) (citing *Robins Dry Dock*).

Zim's negligence claim fails under *Robins Dry Dock/*the economic loss rule because it only alleges economic losses without damage to property; and because Zim's "chain of contracts" vis-à-vis the Port of Houston and the bills of lading constitute a "consensual network of contracts" that "tort law should not supplant."

Texas law generally prevents negligence claims when the plaintiff is a third party to a professional services relationship, such as attorney and clients. In *Mendez*,

16

an employer hired a drug-testing company. *Hous. Area Safety Council, Inc. v. Mendez*, 671 S.W.3d 580, 590 (Tex. 2023). Even though the drug testing company impacted the client-employer's employees, the drug-testing company did not owe a common-law negligence duty to the employees, absent a special legislatively-created relationship. *Id.* Zim has failed to allege that an importer owes a duty to an ocean carrier related to its customs filing. Zim merely baldly states that such a duty exists and no such duty exists in the customs statutes and regulations.

Looking to another professional services relationship between a provider and its client, Texas law also declined to find any negligence duty between an attorney and a third party because the attorney has no professional duty to a third party in the attorney's representation of its client. In *Barcelo,* the Texas Supreme Court found that an attorney does not have such a duty, even if the attorney drafted a will for a client, and the third party is the beneficiary. *Barcelo v. Elliott*, 923 S.W.2d 575, 576 (Tex. 1996). Similarly here, an importer of record does not owe a duty to a third party, such as Zim, in the importer's filings with CBP.

Even if Elektron owed such a duty, Zim has failed to properly allege any breach. A mere legal conclusion that Elektron's acts or omissions (reiterating that *Elektron did not make* the customs entry, which was handled by Sunnyside) caused a CBP hold does not state a claim for negligence. In fact, this allegation does not reflect the reality of how CBP holds are imposed. Zim is well aware that CBP holds

17

#111701659v6

do not arise necessarily from an importer's error/omission because Zim (as a major foreign ocean carrier) is intimately involved in global trade and U.S. CBP filings.

In *Schenker*, an ocean transportation intermediary ("OTI") alleged damages against a customs broker for demurrage that allegedly arose due to failure to provide requisite paperwork to CBP. 2016 N.J. Super. Unpub. LEXIS 1535 at *3. The New Jersey court initially found "there was no duty imposed by law" with respect to the OTI's alleged customs errors, and thus no viable negligence action; and also held that even if a negligence claim were viable, it was barred by the New Jersey economic loss rule (substantially equivalent to *Robins Dry Dock/*Texas rule). *Id.* at *8-9. Although the customs broker and OTI were not in contractual privity, the interrelated contracts allocating risks and linking the two, as well as the purely economic losses alleged, precluded any negligence claim. *Id.* at *4, 8-9.

Likewise, Zim has only alleged non-tort-governed demurrage charges that are purely financial and based on the international importation of cargo provided through interrelated contracts. This risk has been contractually allocated—**and significantly is also regulated by the FMC under the Shipping Act**—thus barring a negligence claim for demurrage charges not tied to any physical injury or property damage. Zim's alleged negligence claim fails the *Robins Dry Dock/*economic loss rule on both "principal rationales": because such economic harms can lead to "indeterminate liability" that could chill economic activity and because "the risks of

economic harms are better suited to allocation by contract than by negligence because (a) the parties usually have a full opportunity to consider their positions and manage risks ahead of time, and (b) pecuniary remedies are fungible." *Golden Spread*, 954 F.3d at 808 (citing Restatement (Third) of Torts: Liability for Economic Harm § 1 cmt. c (Am. Law Inst., Tentative Draft No. 1, 2012)). But there is also an important third rationale at play. The statutory overlay of the Shipping Act and regulations promulgated thereunder allocate demurrage risk and militate against countenancing a tort action on the basis of Shipping Act-regulated conduct, when Congress and the FMC have outlined the rules and process to resolve this dispute.

Because Zim makes merely conclusory allegations (contrary to applicable law) that *Elektron* somehow owed/ breached a duty to Zim in *SunnySide's* customs filing, and solely economic losses barred by the *Robins Dry Dock/*economic loss rule, the negligence claim fails under *Iqbal/Twombly*.

## III.    Conclusion and Prayer

Zim's Complaint fails the *Iqbal/Twombly* pleading requirements and does not state any viable claims as to its three alleged causes of action. Elektron requests that the Court dismiss Zim's Complaint pursuant to Rule 12(b)(6) (*and only in the alternative* to Elektron's request for dismissal/stay of this action pursuant to its contemporaneously filed motion to dismiss under the primary jurisdiction doctrine).

19

Respectfully Submitted,

 _/S/ Sara B. Kuebel_____
SARA B. KUEBEL
Texas Bar No. 24147092
S.D. Tex. Federal No. 3504183
Jones Walker, LLP
201 St. Charles Avenue - 48th Floor
New Orleans, Louisiana 70170-5100
Telephone:      (504) 582-8483
Facsimile:      (504) 589-8483
E-Mail: skuebel@joneswalker.com

**Attorneys for Elektron Enterprises, LLC**

**OF COUNSEL** (*pro hac vice* applications forthcoming):

Julia Bonestroo Banegas
Jones Walker LLP
Suite 600
1 M Street SE
Washington, DC 20003
Tel: 202.203.1032
Email: jbanegas@joneswalker.com

Christopher M. Hannan
Jones Walker LLP
Suite 5200
201 St. Charles Ave.
New Orleans, LA 70170
Tel: 504.582.8353
Email: channan@joneswalker.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2026, a true copy of the foregoing was filed electronically on the Court's CM/ECF docketing system. Notice of this filing will be sent by e-mail to all parties and counsel of record via the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

 _/S/ Sara B. Kuebel_____
Sara B. Kuebel

20

#111701659v6